IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOWELL FINLEY,

        Plaintiff,                    No. 2:05-cv-2060-MCE-JFM (PC)

    vs.

J. MINEAU, et al.,

        Defendants.             FINDINGS & RECOMMENDATIONS
_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the First and Fourteenth Amendments by returning without notice a quarterly package that had been sent to him by an outside vendor. This matter is before the court on cross-motions for summary judgment.[1]

        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] Plaintiff's motion is a renewal of his motion for summary judgment filed September 21, 2006. Defendants' motion for summary judgment was filed October 5, 2007.

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

On July 28, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), <u>cert. denied</u>, 527 U.S. 1035 (1999), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

/////

ANALYSIS

I. <u>Undisputed Facts</u>

At all times relevant to this action plaintiff was an inmate housed at Folsom State Prison (FSP). Defendant J. Mineau was a correctional sergeant at FSP, defendant Kramer was the Warden of FSP, and defendant Woodford was the Director of the California Department of Corrections and Rehabilitation (CDCR). On May 26, 2004, plaintiff was placed in administrative segregation at FSP following his conviction on prison disciplinary charges of threatening an officer. Plaintiff was housed in administrative segregation from May 26, 2004 to September 16, 2004.

At all times relevant to this action, FSP had a so-called quarterly package system through which inmates were allowed to order items to be sent to them from outside the prison. Inmates in Privilege Group A are permitted to receive up to four quarterly packages per year. Inmates in Privilege Group D are only permitted to receive one quarterly package per year, and eligibility for receipt of packages for inmates in Privilege Group D begins after completion of one year in this privilege group. In early June 2004, pursuant to the disciplinary conviction plaintiff's work/incentive privilege group was changed from Privilege Group "A" to Privilege Group "D".

On July 13, 2004, a package addressed to plaintiff arrived at FSP. Plaintiff testified at his deposition that the package was a quarterly package that contained food, hygiene and other items that had been sent to him by his sister through an approved vendor named Access Secure Pack. Deposition of Jowell Finley, July 16, 2007, at 35-36.[2] Pursuant to FSP Operational Procedures 2 and 11, inmates in administrative segregation are not allowed to receive quarterly packages. Defendants' Exhibit, Memorandum dated June 8, 2005, at 3. The Operational Procedures provide that if an inmate receives a quarterly package while in administrative

---

[2] A copy of excerpts from plaintiff's deposition is attached as an exhibit to defendants' motion for summary judgment.

segregation the package will be returned to the sender. Id. The package addressed to plaintiff was refused and returned to the vendor on or about July 27, 2004.

Plaintiff was not notified either that the package had arrived or that it would be returned to the vendor. Plaintiff was transferred to California State Prison-Sacramento (CSP-Sacramento) on or about October 1, 2004. On or about November 23, 2004, plaintiff was told by officials at CSP-Sacramento whom he had asked for assistance in locating the package that the package had been returned to the vendor in July 2004.

II. Cross-Motions for Summary Judgment

Plaintiff seeks summary judgment on the grounds that (1) he was entitled to notice and an opportunity to be heard before his package was returned; and (2) the relevant FSP Operational Procedure improperly infringed on plaintiff's constitutional rights.

Defendants seek summary judgment on the grounds that (1) their involvement in this action was limited to processing plaintiff's inmate appeal from the return of his package;[3] (2) plaintiff has no protected liberty interest in received packages while in administrative segregation; (3) the return of the package did not violate plaintiff's rights under the First Amendment; and (4) they are entitled to qualified immunity.

A. Due Process

Plaintiff's first claim is that his right to procedural due process was violated by the absence of notice and an opportunity to be heard before his package was refused and returned to

---

[3] The parties are in dispute about whether defendant Mineau was the prison official who returned plaintiff's package to the vendor. This dispute is immaterial. The gravamen of plaintiff's challenge is to the validity of the FSP Operational Procedure pursuant to which the package was returned. It is undisputed that defendant Mineau and the other defendants relied on the challenged FSP Operational Procedure in rejecting plaintiff's inmate grievance. Each of the defendants, including defendant Mineau, were personally involved in ratifying the application of the challenged Operational Procedure to plaintiff's package. Defendants' contention that they are entitled to summary judgment because they were only involved in processing plaintiff's grievance is without merit. Cf. Blankenhorn v. City of Orange, 485 F.3d 463, 485-486 (9th cir. 2007) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)) (discussing liability based on ratification of unconstitutional conduct).

the sender.  As noted above, the package was returned pursuant to the FSP Operational Procedures 2 and 11.  Where, as here, the property was returned in accordance with a generally applicable administrative procedure, the constitutional procedural due process requirements are satisfied by the general notice provided by the published Operational Procedures.  See, e.g., Halverson v. Skagit County, 42 F.3d 1257, 1260-61 (9th Cir.1994) (holding that "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice  and a hearing; general notice as provided by law is sufficient").  Once plaintiff was placed in administrative segregation and his privilege group was changed, prison regulations gave plaintiff adequate notice of the limitations and restrictions on his right to receive packages that accompanied that housing placement and change in privilege group.  For these reason, defendants are entitled to summary judgment on plaintiff's due process claim.

   B.   First and Fourteenth Amendments

Plaintiff also claims that the restriction on the right to receive the package violated his rights under the First and Fourteenth Amendments.  The First Amendment protects the flow of information to prisoners, including their receipt of the mails.  See Thornburgh v. Abbott, 490 U.S. 401, 402 (1989); Crofton v. Roe, 170 F.3d 957, 959 (9th Cir.1999).  Here, there is no evidence that the package contained any information protected by the First Amendment.  Rather, plaintiff's challenge is to the deprivation of property caused by application of the challenged procedures and thus arises under the Due Process Clause of the Fourteenth Amendment.

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause.  An authorized

deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

Here, plaintiff was denied his package pursuant to established prison regulations and procedures. Prison policies that infringe on inmates' constitutional rights are valid if they are reasonably related to a legitimate penological goal. See Turner v. Safley, 482 U.S. 78, 89 (1987). Defendants have presented evidence of the reason for the operational procedures at issue, as follows:

> [t]he reason for this operational procedure is an inmate who is placed in administrative segregation has demonstrated behavior which disrupts and threatens the security and safety of the institution. Therefore, the restriction on the receipt of packages is for the purpose of limiting these inmate's [sic] access to contraband, materials for weapons, and other items which may be used by the inmate to threaten the security and safety of staff and other inmates. In addition, the packages are returned because the prison does not have the storage space or resources to search and then assume liability for storing inmate property for extended and, in some cases, indefinite periods of time.

Declaration of J. Mineau, filed October 5, 2007, at ¶ 6.

The court looks at four factors in analyzing the validity of a prison regulation under Turner. The first factor requires that "the governmental objective must be a legitimate and neutral one." Id. at 90. The governmental concern in this instance is security. Contraband in packages raises a legitimate security issue, see Bell v. Wolfish, 441 U.S. 520, 553-55 (1979), and security is obviously a valid penological concern, see O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir.1996). There is a logical connection between the instant regulation of packages for inmates in administrative segregation and the governmental interest in maintaining prison security. See Bell, 441 U.S. at 555.

The second factor requires the court to examine whether alternative means of exercising the constitutional right at issue remain open to inmates. Plaintiff acknowledges that inmates in administrative segregation are permitted to obtain from the prison canteen items such

as those that were sent in his quarterly package.  See Plaintiff's Separate Statement of Facts in Support of His Opposition to Defendants' Cross-Motion for Summary Judgment, filed October 18, 2007, at ¶ 16.

The third factor requires assessment of the impact accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources. Requiring prison officials to search and/or to store all quarterly packages coming in to administrative segregation would have a significant impact on prison resources.

Finally, the fourth factor requires assessment of the presence or absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  As noted above, plaintiff has acknowledged that items similar to those sent by his sister were available to him in the prison canteen.  In addition, the applicable prison regulations and procedures provide adequate notice to inmates placed in administrative segregation and/or Privilege Group D that such placements include significant restrictions on receipt of quarterly packages.

For all of the foregoing reasons, defendants are entitled to summary judgment on plaintiff's second claim.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's September 24, 2007 renewed motion for summary judgment be denied; and

2. Defendants' October 5, 2007 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

/////

1  failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: June 18, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

12
finl2060.57